[No. 6378-0-III. Division Three. June 27, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD
B. ALFONSO, *Petitioner.*

*James T. Marston* and *Marston, Hodgins, Shorett, Gillingham, Hardman & Jones,* for petitioner.

*E. R. Whitmore, Prosecuting Attorney,* and *Susan M. Lomax, Chief Deputy,* for respondent.

MUNSON, J.—Ronald B. Alfonso was convicted in Chelan County District Court on January 24, 1983, of driving a motor vehicle while his driver's license had been revoked pursuant to the Habitual Traffic Offenders Act. RCW 46.65.090.[1] Our commissioner granted discretionary review pursuant to RAP 2.3(d)(3), to decide whether several statutes dealing with driving while license suspended or revoked proscribe the same conduct and are therefore unconstitutional. We note the statutory discrepancy between RCW 46.20.342, .416, and .420, but affirm the conviction pursuant to RCW 46.65.090.

Before addressing the issues raised, we are compelled to comment on the procedural posture in which this case comes before this court. Discretionary review was granted on April 19, 1984. The clerk's papers from the Superior Court and three cassette tapes from the District Court were received in May 1985, 2 weeks before oral argument was

---

[1]RCW 46.65.090 provides:

"It shall be unlawful for any person to operate a motor vehicle in this state while the order of revocation remains in effect. Any person found to be an habitual offender under the provisions of this chapter who is thereafter convicted of operating a motor vehicle in this state while the order of revocation prohibiting such operation is in effect shall be guilty of a gross misdemeanor, the punishment for which shall be confinement in the county jail for not more than one year: *Provided,* That any person who is convicted for the offense of operating a motor vehicle while under the influence of intoxicating liquor or drugs as defined in RCW 46.61.506, or the offense of failure to stop and give information or render aid as required in RCW 46.52.020, and is also convicted of operating a motor vehicle while the order of revocation is in effect, shall be confined in the county jail for not less than thirty days nor more than one year, and such sentence shall not be suspended or deferred."

scheduled. The Chelan County Superior Court file reflects counsel requested on May 7, 1985, this documentation be forwarded to this court. This is in excess of 1 year after the date set forth in our clerk's scheduling letter to counsel and of the time requirements of RAP 9.5(a) and 9.6. The time limits specified in the Rules of Appellate Procedure begin to run either when a notice of appeal is filed as a matter of right, RAP 6.1, or upon granting a motion for discretionary review, RAP 6.2.

While the 44 pages of clerk's papers do not present an insurmountable hurdle, the three cassette tapes do. This court has spoken to the issue of our correcting or supplementing a record, *Heilman v. Wentworth,* 18 Wn. App. 751, 754, 571 P.2d 963 (1977), and to the submission of cassette tapes of administrative hearings, *Bennett v. Board of Adj.,* 23 Wn. App. 698, 700–01, 597 P.2d 939 (1979). It now appears the issue of transcription in the instance of district court appeals also needs to be addressed.

■ We concur in the holding of *Seattle v. Boulanger,* 37 Wn. App. 357, 680 P.2d 67 (1984). The Rules of Appellate Procedure do not provide for submission of cassette tapes—untranscribed—to this court. RAP 9.1 provides in part:

#### COMPOSITION OF RECORD ON REVIEW

(a) **Generally.** The "record on review" may consist of (1) a "report of proceedings", (2) "clerk's papers", and (3) exhibits.

(b) **Report of Proceedings.** The report of proceedings may take the form of a "verbatim report of proceedings" as provided in rule 9.2, a "narrative report of proceedings" as provided in rule 9.3, or an "agreed report of proceedings" as provided in rule 9.4.

The party seeking review must "arrange for transcription of and payment for" the verbatim report of proceedings. RAP 9.2(a). Since there is neither a narrative nor an agreed report of proceedings here, we need not address the manner of their preparation.

The three tapes submitted at petitioner's request contain district court cases in addition to that of the petitioner.

There is no index, either by counter or by elapsed minutes, to indicate where within each cassette the recording of petitioner's case may be located. The immense case volume before the Court of Appeals does not permit us the luxury of listening to tape recordings of trial proceedings; we listened to them here only because of the time factor. As we noted in *Bennett v. Board of Adj., supra* at 700–01:

> [i]n order to satisfy the requirements for review by a court of record, a written transcript of the proceedings must be submitted. Such a written transcript may be a verbatim report, RAP 9.2, a narrative report, RAP 9.3, or an agreed report of proceedings, RAP 9.4. The rules on appeal anticipate that a verbatim report of proceedings will be typewritten as denoted by the form generally required, which includes indexing (RAP 9.2(e)), size of page, number of lines per page, spacing, size of type (RAP 9.2(f)) and references to the record in the briefs (RAP 10.3(a)(4)). Tape recordings obviously do not fulfill these requirements.

(Footnote omitted.)

Upon granting discretionary review pursuant to RAP 2.3(d), the petitioner will be responsible for transcription of the verbatim report of proceedings or producing either a narrative or agreed report of proceedings. Hereafter, cassette tapes, untranscribed, will not be accepted.

Regarding the merits of Mr. Alfonso's contentions, he does not challenge the sufficiency of the evidence to support his conviction under RCW 46.65.090, a gross misdemeanor punishable by not more than 1 year in jail. When stopped by a state trooper for a moving violation and asked to produce his driver's license, he indicated it had been revoked pursuant to the Habitual Traffic Offenders Act. Notwithstanding, he alleges an equal protection violation because RCW 46.20.342[2] and .416[3] prescribe different pen-

---

[2]RCW 46.20.342 provides in part:

"(1) Any person who drives a motor vehicle on any public highway of this state at a time when his privilege so to do is suspended or revoked in this or any other state or when his policy of insurance or bond, when required under this chapter, shall have been canceled or terminated, shall be guilty of a misdemeanor: *Pro-*

alties for the same conduct prohibited by RCW 46.65.090. The difference occurs in the penalty which may be imposed on a second conviction, *i.e.*, not less than 90 days (RCW 46.20.342) and not less than 20 days (RCW 46.20.416). RCW 46.20.420,[4] mentioned in oral argument, does not prescribe a penalty. Also, RCW 46.20.416 has been decriminalized to a traffic infraction, while RCW 46.20.342, .420 and 46.65 are excluded from the definition of traffic infraction. RCW 46.63.020.

It is a denial of equal protection if the prosecutor has discretion to charge under different statutes which proscribe the same conduct yet provide different degrees of punishment. *State v. Cann*, 92 Wn.2d 193, 595 P.2d 912 (1979); *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970); *State v. Ensminger*, 77 Wn.2d 535, 463 P.2d 612 (1970); *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956); *State*

---

*vided,* That the offenses described in RCW 46.20.021 and 46.20.190, as now or hereafter amended, are lesser included offenses within the offense described by this section. Upon the first conviction therefor, he shall be punished by imprisonment for not less than ten days nor more than six months. Upon the second such conviction therefor, he shall be punished by imprisonment for not less than ninety days nor more than one year. Upon the third such conviction therefor, he shall be punished by imprisonment for one year. There may also be imposed in connection with each such conviction a fine of not more than five hundred dollars."

[3]RCW 46.20.416 provides:

"Any person who drives a motor vehicle on any public highway of this state while that person is in a suspended or revoked status shall be guilty of a misdemeanor. Upon a first conviction therefor, the person shall be punished by imprisonment of not less than ten days, nor more than six months. Upon the second such conviction therefor, the person shall be punished by imprisonment of not less than twenty days, nor more than one year. Upon the third such conviction therefor, the person shall be punished by imprisonment for one year. There may also be imposed in connection with each conviction a fine of not more than five hundred dollars."

[4]RCW 46.20.420 provides:

"Any resident or nonresident whose driver's license or right or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this title shall not operate a motor vehicle in this state under a license, permit or registration certificate issued by any other jurisdiction or otherwise during such suspension or after such revocation until a new license is obtained when and as permitted under this chapter."

*v. Thomas*, 35 Wn. App. 598, 668 P.2d 1294 (1983); *State v. Jessup*, 31 Wn. App. 304, 641 P.2d 1185 (1982). The state constitution's privileges and immunities clause, article 1, section 12, may be construed in a manner similar to the Fourteenth Amendment equal protection clause, or may be construed to provide greater individual rights than the equal protection clause. *Darrin v. Gould*, 85 Wn.2d 859, 868, 540 P.2d 882 (1975) (sex discrimination case). However, cases dealing with statutory construction have construed the two constitutions as providing the same protections. *State v. Zornes, supra; Olsen v. Delmore, supra.*

■ On the other hand, if a statute is a special as opposed to general statute, then the prosecutor must charge under the special statute; there is no denial of equal protection. *State v. Cann, supra; State v. Walls*, 81 Wn.2d 618, 503 P.2d 1068 (1972); *State v. Thomas, supra; State v. Jessup, supra. Accord, State v. Shriner*, 101 Wn.2d 576, 681 P.2d 237 (1984); *State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982); *State v. Haley*, 39 Wn. App. 164, 692 P.2d 858 (1984). The key is whether the statutes are concurrent in that the general statute will be violated in each instance where the special statute has been violated. *State v. Shriner, supra.*

It is irrelevant that the special statute may contain additional elements to those of the general statute. *See State v. Shriner, supra* (statute proscribing failure to return rental car has notice requirements not found in first degree theft statute); *State v. Danforth, supra* (statute prohibiting failure to return to work release facility contains element of intent not present in general escape statute); *State v. Walls, supra* (statutes dealing with defrauding an innkeeper are divided according to how many rooms at the inn; no such "element" in grand larceny statute).

One rationale behind the general/special rule is the need to give effect to the special statute. If the prosecutor has discretion to charge under either statute, presumably he or she would always choose the general statute if it requires

proof of fewer elements. *State v. Shriner, supra; State v. Danforth, supra.*

Both RCW 46.20.342 and .416 provide it is a misdemeanor to drive a motor vehicle on a public highway while one's license is revoked or suspended. Penalties are set forth in each statute for the first, second and third convictions. RCW 46.65.090 provides it is a gross misdemeanor for a person found to be a habitual traffic offender to operate a motor vehicle while the revocation is in effect. The penalty is confinement in a county jail for not more than 1 year.

RCW 46.65.090 is part of the Washington Habitual Traffic Offenders Act. The policy of the act is to provide maximum safety for all who travel on public highways; to deny the privilege of operating motor vehicles to persons who have demonstrated indifference for the safety of others and disrespect for the laws of the State; to discourage repetition of criminal acts; and to "impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws." RCW 46.65.010.

The definition of habitual traffic offender includes three or more convictions within a 5-year period for driving a motor vehicle while one's license, permit, or privilege to drive has been suspended or revoked. RCW 46.65.020(1)(d). A person found to be a habitual traffic offender is subject to having his license revoked for 5 years. RCW 46.65.060. Counsel advised the trial court Mr. Alfonso had over 20 violations before he was accorded the status of a habitual traffic offender.

RCW 46.65.090 is a special statute. It contains the same elements as the general statutes prohibiting driving while one's license is revoked, plus the element that the defendant be found a habitual offender. Since the prosecutor would not have discretion to charge under the presumed facts of this case, there was no denial of equal protection.

The second issue concerns RCW 46.20.342 and .416. The State concedes they prescribe different penalties for the same conduct, but argues there is no equal protection

problem because RCW 46.20.342 impliedly repealed RCW 46.20.416. Implied repeals were recently discussed in *Local 497, Int'l Bhd. of Elec. Workers v. PUD 2*, 103 Wn.2d 786, 698 P.2d 1056 (1985). We do not reach this issue, however, because RCW 46.65.090 is clearly the only statute applicable to Mr. Alfonso.[5]

The conviction is affirmed.

GREEN, C.J., and MCINTURFF, J., concur.

Reconsideration denied August 22, 1985.

---

[5]Mr. Alfonso contends he was charged in two different counties on two different occasions in 1982 under RCW 46.20.342. He is not collaterally attacking those convictions, only raising them to support his argument that the prosecutor has discretion to charge under either statute. The convictions are not part of the record; therefore, we do not consider them. RCW 46.20.420, mentioned in oral argument, prohibits operation of a motor vehicle under a license or permit "issued by any other jurisdiction or otherwise" while one's Washington license has been suspended or revoked. Nothing in the record indicates Mr. Alfonso's conduct was within this statute.