[No. 56591–1.   En Banc.   October 25, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN P.
SMITH, *Petitioner.*

*Bertha B. Fitzer,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Gary R. Tabor, Chief Criminal Deputy,* for respondent.

DOLLIVER, J.—On December 20, 1985, defendant John P. Smith contacted MicroFocus, Incorporated and inquired into purchasing a software package called "Professional Cobal". At the time, defendant was a student at The Evergreen State College (TESC). After MicroFocus informed defendant he could not examine the software free of charge, he agreed to purchase it c.o.d. The marketing representative who took defendant's order testified that defendant represented himself as being a professor at TESC, thereby entitling him to a 20 percent discount off the $3,000 market price of the program.

On December 23, 1985, the United Parcel Service (UPS) attempted to deliver the program to defendant at TESC. The UPS driver spoke with the campus police sergeant who informed him the address on the package was actually student housing rather than an on–campus office address. The driver eventually located the correct address and delivered the program and instruction manual to defendant. Both the program and the manual were copyrighted. Defendant wrote a personal check to MicroFocus for the purchase in

the amount of $2,407, even though the account upon which the check was issued had a balance of only $472.52. Defendant also maintained another bank account which had a balance of approximately $7,062 at the time. Almost immediately after receiving the program, defendant made a copy of it and the instruction manual.

Defendant testified that the following morning he realized the program did not work on his computer. At some point after this, defendant called his bank and stopped payment on the check he had written to MicroFocus. Defendant then returned the items to MicroFocus, marking the package with the notation, "Unauthorized purchase, returned".

After investigation into the attempted misdelivery of the MicroFocus package, the campus police sergeant at TESC obtained a warrant to search defendant's apartment. During the execution of the warrant, officers uncovered multiple complete sets of the MicroFocus software defendant had ordered and returned, as well as a copy of the instruction manual which accompanied the software. These items, plus copies of additional programs defendant had ordered from other manufacturers but then returned, were seized and later produced at trial.

Defendant was charged in Thurston County Superior Court under RCW 9A.56.030(1)(a) and RCW 9A.56-.020(1)(a) or (1)(b) with one count of first degree theft. Before trial, defendant moved to dismiss the charge, arguing federal copyright law preempted the State's jurisdiction to prosecute him for the offense. The trial court denied the motion. Defendant did not renew his motion. Defendant also moved to suppress reference to a charge for welfare fraud pending against him in Jefferson County. The trial court granted the motion contingent upon defendant not opening the subject up.

During trial, defendant admitted he had received five other software packages in the mail, paid for them, and then later stopped payment on the checks. He also testified

to having made backup copies for all of the ordered programs but one, which he stated could not be copied. Defendant testified his original intention was to keep each of the programs he ordered, but he returned them because he later realized none of them ran properly on his computer. He also testified he copied the programs because the software manuals suggested doing this in case the master program was damaged or destroyed. He testified he copied the manuals in order to protect himself from theft or other loss. Although he kept copies of the materials after returning them to the manufacturers, he testified he never intended to use them.

When defendant was questioned about receiving the goods at a discount, he testified he had told a college official that he "understood how the system worked and how to manipulate it", but what he meant was that he was getting software at a wholesale price rather than the retail price and thereby "cutting out the middle man." Defendant also testified he merely told MicroFocus that he was "with" TESC and not that he was a professor there.

The trial court refused to give defendant's proposed jury instructions on what he alleged were the lesser included offenses of second and third degree theft.

The jury found defendant guilty as charged. The defendant appealed to the Court of Appeals. In an unpublished opinion, the Court of Appeals affirmed the trial court. *State v. Smith,* noted at 55 Wn. App. 1028 (1989). We granted review and affirm, although in part for reasons other than those set out by the Court of Appeals.

We first examine whether the State is preempted by federal copyright legislation from prosecuting defendant under RCW 9A.56.030.

17 U.S.C. § 301, the federal copyright legislation, provides in part:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression

and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

. . . .

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

RCW 9A.56.030(1) defines first degree theft as follows:

A person is guilty of theft in the first degree if he commits theft of:

(a) Property or services which exceed(s) one thousand five hundred dollars in value; or

(b) Property of any value taken from the person of another.

"Theft", according to RCW 9A.56.020(1), means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services . . ..

Subsection (a) is known as theft by taking while subsection (b) is known as theft by deception. *State v. Southard,* 49 Wn. App. 59, 741 P.2d 78 (1987). Here, defendant was charged under both subsections (a) and (b).

"Deprive", in addition to its common meaning, also includes making "unauthorized use or an unauthorized copy of records, information, data, trade secrets, or computer programs . . ." RCW 9A.56.010(5).

Defendant argues that the State, by charging him under Washington's theft statute, is in essence prosecuting him for the same conduct covered under federal copyright law; that is, the unauthorized copying of the MicroFocus computer program and manual. Defendant supports his theory by arguing that duplicating the program and manual met the definition of "deprive" under both RCW 9A.56.010(5) and Title 17.

The Court of Appeals rejected defendant's theory on the grounds that criminal prosecution for theft need not have been premised upon defendant's duplication of copyrighted material. *Smith,* slip op. at 6. Instead, the court found the evidence in this case supported finding defendant guilty of theft by deception, which does not require an intent permanently to deprive the owner of the property in question (hence, the fact defendant duplicated copyrighted materials would be irrelevant in order to convict him for theft). *Smith,* slip op. at 6 (citing *State v. Vargas,* 37 Wn. App. 780, 781–82, 683 P.2d 234 (1984)). In so concluding, the court also found there was no evidence upon which the jury could have found defendant guilty of theft by taking, since theft by taking requires a trespass as well as evidence of an intent permanently to deprive. *Smith,* slip op. at 7 n.11 (citing *Vargas,* at 785); *Smith,* slip op. at 6 (citing *Vargas,* at 782; *State v. Burnham,* 19 Wn. App. 442, 576 P.2d 917, *review denied,* 90 Wn.2d 1020 (1978)).

We agree with the Court of Appeals that federal law does not preempt the State's prosecution of defendant in this case.

The notes of the committee report pertaining to 17 U.S.C. § 301 provide:

> The declaration of this [exclusivity] principle in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas as between State and Federal protection.
>
> . . . .
>
> The examples in clause (3), while not exhaustive, are intended to illustrate rights and remedies that are *different in nature from the rights comprised in a copyright and may continue to be protected under State common law or statute.* . . . [T]he general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement. . . .

(Italics ours.) Historical & Revision Notes, 17 U.S.C. § 301, at 83–84.

■ A leading commentator on federal copyright law describes federal preemption as follows:

> If under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will *in itself* infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

(Footnotes omitted.) 1 M. Nimmer & D. Nimmer, *Copyright* § 1.01[B], at 1–13 to 1–14 (1989).

While generally accepting this test, the courts have demanded that the "extra element" must be one which changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *Gladstone v. Hillel,* 203 Cal. App. 3d 977, 987, 250 Cal. Rptr. 372 (1988) (citing *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)). *See also Brignoli v. Balch Hardy & Scheinman, Inc.,* 645 F. Supp. 1201 (S.D.N.Y. 1986); *Harper & Row, Publishers, Inc. v. Nation Enters.,* 501 F. Supp. 848 (S.D.N.Y. 1980).

■ Applying this test to the present case, it is clear federal copyright law does not preempt an action under Washington's theft statute. Proof that defendant wrongfully or deceptively obtained the computer materials in the present case includes elements different from those comprising a federal copyright violation. Under the theft statute as applied in this case, the State is prosecuting the *manner in which* defendant obtained the computer materials rather than the fact he copied them. Hence, this serves to change qualitatively the nature of the cause of action. In fact, given that the duplicated materials are used under Washington's theft statute only as proof of an intent to deprive, it would be irrelevant whether they were copyrighted.

By holding federal copyright law did not preempt state action, and that there was insufficient evidence of a theft by taking, defendant argues the Court of Appeals created a separate constitutional dilemma; that is, whether he was

denied his constitutional right to a unanimous jury verdict on the grounds the jury was instructed on both alternative means to committing theft, although the evidence supported only one of those means. *See State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976); *State v. Whitney,* 108 Wn.2d 506, 510–11, 739 P.2d 1150 (1987).

We also reject defendant's contention of a constitutional dilemma since we find erroneous the Court of Appeals' conclusion that theft by taking requires a trespass. In *State v. Vargas,* 37 Wn. App. 780, 683 P.2d 234 (1984), the court stated in dicta that larceny at common law required evidence of a trespass. *Vargas,* at 785. In so concluding, *Vargas* relied on *State v. Smith,* 2 Wn.2d 118, 98 P.2d 647 (1939), wherein the court appears judicially to have required evidence of a trespass in cases involving theft by taking. *Smith,* at 121–22 (citing 18 Am. Jur. *Embezzlement* § 3, at 572).

█ █ Trespass is not required for statutory theft by taking. "The Legislature may define crimes. Where it does so, its statutory definition may supersede common law." (Citations omitted.) *State v. Komok,* 113 Wn.2d 810, 814, 783 P.2d 1061 (1989). *See also A Hornbook to the Code,* 48 Wash. L. Rev. 149, 245–48 (1972). Both this court and the Court of Appeals have affirmed convictions for theft by taking under RCW 9A.56.020(1)(a) without requiring evidence of a trespass. *See State v. Britten,* 46 Wn. App. 571, 731 P.2d 508 (1986) (involving theft by taking which occurred in a department store); *State v. Komok, supra* (also involving theft in a department store). *Vargas* and any other decision inferring the contrary is disapproved. As we find theft by taking as defined by statute does not include the common law element of trespass, the contention of the Court of Appeals and defendant that there was insufficient evidence to convict under the taking statute is not valid. There was sufficient evidence for conviction of theft either by taking (RCW 9A.56.020(1)(a)) or deception (RCW 9A.56.020(1)(b)). *State v. Kitchen,* 110 Wn.2d 403, 410, 756 P.2d 105 (1988).

■ We next examine whether the trial court erred by refusing to instruct the jury as to the lesser included offenses of second and third degree theft. An instruction on a lesser included offense will be given when each element of the lesser included offense must be a necessary element of the offense charged, and when the evidence in the case supports an inference that the lesser included crime was committed. *State v. Fowler,* 114 Wn.2d 59, 66–67, 785 P.2d 808 (1990) (citing *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978)).

For purposes of the case before us, the pivotal difference between first, second, and third degree theft is the value of the stolen property. *See* RCW 9A.56.030 (first degree theft—property exceeding $1,500 in value); RCW 9A.56.040 (second degree theft—property valued between $250 and $1,500); and RCW 9A.56.050 (third degree theft—property valued at not more than $250). The market value of the computer program here was $3,000, before the 20 percent discount, and $2,400 after the discount was applied. Defendant argues the $600 difference between the market and discount prices, which he obtained as a result of his misrepresenting himself as being with TESC, falls within the definition of second degree theft. We disagree. Defendant's misrepresentation merely affected the value of the computer program itself. The $600 discount does not, by itself, constitute separate stolen property. Defendant has failed to produce evidence which would support an inference that either theft in the second or third degree was committed. We affirm the trial court's refusal so to instruct.

Finally, we examine whether the trial court erred in admitting evidence concerning defendant's receipt of monthly public assistance income. Defendant argues such evidence was irrelevant and prejudicial under Rules of Evidence 401 and 403. The trial court, however, found defendant had raised the issue during his direct examination, thereby opening the door to the State to cross–examine him on those facts.

During direct examination, defendant offered the following information:

Q. Any particular reason why you bothered to use counter checks and have the number imprinted upon it?

A. Yes, I was worried about trying to make every dollar count, because I felt like it was important that I be able to get through school, and I wasn't working, so I was just living on the money that I had in the account, and so I was just trying to save a couple bucks by not buying regular printed checks.

On cross examination, the State sought to expand on the area of Smith's finances:

Q. Earlier you testified you had no other source of income while going to school, is that correct, only your penny pinching?

A. What I testified to was I was unemployed.

Q. You did have other sources of income at that time; didn't you?

MR. TAYLOR: I object, not relevant.

THE COURT: Sustained.

MR. HARJU: Your Honor, it is important. I recall his testimony he made an important point he had no other sources of income for this, and I will show that is not true.

Mr. Taylor thought it was important because he brought it out on his direct examination.

THE COURT: For that limited purpose, the objection would be overruled.

By Mr. Harju:

Q. You did have other income during this period of time; did you not?

A. Some.

Q. You were getting over $400 in public assistance?

. . . .

A. Yes.

At the close of his case, defendant renewed his earlier motion for a mistrial based on the above testimony. The trial court denied the motion on the grounds defendant opened up the subject of his limited funds and his bank accounts during direct examination. Although the trial court also stated it would have preferred if defendant's additional source of income had been introduced in some manner other than as public assistance, it did not believe the statement was so prejudicial as to require a mistrial.

■ The admission of relevant evidence is within the sound discretion of the trial court and will not be reversed unless there is a manifest abuse of that discretion. *State v. Mak,* 105 Wn.2d 692, 702, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Mak,* at 702–03 (quoting ER 401). The trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice; such determinations are left to the sound discretion of the trial court. *Mak,* at 703.

■ We agree with the trial court that since defendant himself raised the issue of his limited income, the State had the right to develop that testimony further during cross examination. We also do not find allowing such testimony substantially outweighed by the danger of unfair prejudice. In fact, the testimony tended to show defendant had income in addition to his bank accounts. This would seem to benefit his position rather than cause unfair prejudice to it. We affirm the trial court on this ground.

The Court of Appeals is affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.