# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51349-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| HAROLD CURTIS STATEN III, | |
| Appellant. | |

MAXA, C.J. – Harold Staten appeals his sentence imposed for convictions of second degree kidnapping and indecent liberties with forcible compulsion arising out of an incident with a person with whom he previously had a sexual relationship. He argues that he received ineffective assistance of counsel when trial counsel failed to argue at sentencing that his second degree kidnapping and indecent liberties convictions constituted the same criminal conduct.

We hold that (1) Staten's claim of ineffective assistance of counsel fails because he cannot show that he was prejudiced by defense counsel's failure to argue same criminal conduct; (2) as the State concedes, the DNA collection fee imposed as a mandatory legal financial obligation (LFO) must be stricken and a scrivener's error in the judgment and sentence must be corrected; and (3) Staten's claims asserted in a statement of additional grounds (SAG) are not specific enough to be considered.

Accordingly, we affirm Staten's sentence, but remand for the trial court to strike the DNA collection fee and correct a scrivener's error in the judgment and sentence.

FACTS

Staten and EB began a sexual relationship in 2015. EB became pregnant and gave birth to a child in 2016. The child was born medically fragile and died on September 25, 2016.

The next day, Staten called EB to check on the health of their child and EB told him that the child had passed away. Staten met EB outside her apartment building in Vancouver that evening. Staten left but later sent EB a text message asking if they could get something to eat and talk together. EB said no but agreed that they could meet the next night.

Later that evening, Staten pulled up as EB was smoking a cigarette outside her apartment building. They sat and talked about their son. Staten told EB that he wanted to make another baby. EB started to go back into her apartment. Staten grabbed EB by the arm and told her that he wanted to keep talking. Staten pushed EB against the car and then shoved her into the passenger seat of his car and closed the door. EB opened the door but Staten closed it again and prevented her from reopening it.

Staten told EB that he was going to take her to a motel where they had sex in the past. Instead, he drove her to a nearby park. Staten told EB to put on a pair of shoes that he had in his car so they could walk through the park. EB said no and got out of the car to smoke a cigarette. She walked to the corner to get some distance from Staten and made a phone call to a friend to ask for help. The friend did not answer.

Staten then walked over to EB and they walked back to the car together. EB had her back to the car and Staten was directly in front of her. Staten again brought up having another baby and tried to kiss EB and made sexual advances. He also tried to convince her to have sex

with him. Staten pulled his penis out of his pants and pressed it against EB's arm as he was kissing her. He then put his hand inside the front of EB's pants and touched her vagina. EB told him to stop and tried to push him away. Staten suggested that they go into the park and have sex and try to make another baby.

EB then got a series of calls from her mother. EB eventually answered and told her mother that she was at the park with Staten. EB's mother came to the park to get EB and then called 9-1-1.

The State charged Staten with first and second degree kidnapping with sexual motivation, second degree rape, and indecent liberties with forcible compulsion. At trial, the jury convicted Staten of second degree kidnapping and indecent liberties with forcible compulsion but acquitted him of first degree kidnapping and second degree rape. The jury also found that Staten had committed the second degree kidnapping with a sexual motivation.

At sentencing, defense counsel did not argue that the second degree kidnapping and indecent liberties constituted the same criminal conduct. The trial court imposed the DNA collection fee as a mandatory LFO. In addition, the judgment and sentence erroneously noted that Staten had pleaded guilty.

Staten appeals his sentence and the imposition of the DNA collection fee.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Staten argues that he received ineffective assistance of counsel when defense counsel failed to argue at sentencing that second degree kidnapping with a sexual motivation and indecent liberties constituted the same criminal conduct. We hold that Staten's claim fails

because he cannot prove that the trial court would have found that the offenses constituted the same criminal conduct if defense counsel had raised the issue.

1.    Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Defense counsel's obligation to provide effective assistance applies at sentencing. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 547, 299 P.3d 37 (2013). We review ineffective assistance of counsel claims de novo. *Estes*, 188 Wn.2d at 457.

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him or her. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that, except for counsel's error, the result of the proceeding would have been different. *Id.* It is not enough that ineffective assistance conceivably impacted the case's outcome; the defendant must affirmatively show prejudice. *Id.*

Failure to argue same criminal conduct at sentencing may constitute ineffective assistance of counsel. *Rattana Keo Phuong*, 174 Wn. App. at 547. To establish that defense counsel provided ineffective assistance by failing to argue same criminal conduct, Staten must demonstrate that there is a reasonable probability that the trial court would have found same criminal conduct and that such a finding would have affected his sentence. *See State v. Munoz-Rivera*, 190 Wn. App. 870, 887, 361 P.3d 182 (2015); *Rattana Keo Phuong*, 174 Wn. App. at 547-48.

2.    Same Criminal Conduct – Background

For purposes of calculating a defendant's offender score, multiple offenses that encompass the same criminal conduct are counted as one offense. RCW 9.94A.525(5)(a)[1]. Under RCW 9.94A.589(1)(a), two or more offenses constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." If any of these elements is not present, the offenses are not the same criminal conduct. *State v. Reyna Valencia*, 2 Wn. App. 2d 121, 125, 416 P.3d 1275, *review denied*, 190 Wn.2d 1020 (2018). And the definition of "same criminal conduct" generally is applied narrowly to disallow most same criminal conduct claims. *Id.*

The defendant bears the burden of establishing that two or more offenses encompass the same criminal conduct. *Id.* " '[E]ach of a defendant's convictions counts toward his offender score *unless* he convinces the court that they involved the same criminal intent, time, place, and victim.' " *Id.* (quoting *State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013)).

Here, the kidnapping occurred when Staten forcibly pushed EB into the car and drove her to a park. At the park, EB got out of the car without interference from Staten and walked a short distance away to make a phone call. The indecent liberties offense occurred a few minutes later when Staten put his hand inside the front of EB's pants. The two offenses involved the same victim. The question for this court is whether the two offenses involved the same criminal intent and occurred at the same time and place.

---

[1] RCW 9.94A.525 was amended in 2017. Laws of 2017, ch. 272, § 3. Because those amendments do not affect our analysis, we cite to the current version of the statute.

### 3. Same Criminal Intent Requirement

#### a. Applicable Law

The Supreme Court first articulated the appropriate analysis for determining whether two offenses meet the intent prong of the same criminal conduct analysis in *State v. Dunaway*, 109 Wn.2d 207, 214-15, 743 P.2d 1237 (1987). Under the *Dunaway* approach, we examine the extent to which the criminal intent, viewed objectively, changed from one crime to the next. *State v. Wright*, 183 Wn. App. 719, 734, 334 P.3d 22 (2014). The question is whether " 'there was any substantial change in the nature of the criminal objective.' " *Rattana Keo Phuong*, 174 Wn. App. at 546-47 (quoting *State v. Burns*, 114 Wn.2d 314, 318, 788 P.2d 531 (1990)). We do not examine the mens rea elements of the criminal offenses but look at the defendant's criminal purpose in committing the offense. *Rattana Keo Phuong*, 174 Wn. App. at 546.

Courts have adopted guidelines for assessing whether the criminal intent is the same for two crimes. First, whether the defendant's objective criminal purpose changed " 'can be measured in part by whether one crime furthered the other.' " *Wright*, 183 Wn. App. at 734 (quoting *State v. Vike*, 125 Wn.2d 407, 411, 885 P.2d 824 (1994). Second, "[c]rimes may involve the same criminal intent if they were part of a continuing, uninterrupted sequence of conduct." *State v. Latham*, 3 Wn. App. 2d 468, 479, 416 P.3d 725, *review denied* 191 Wn.2d 1014 (2018). Third, if an offender "has time to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act, and makes the decision to proceed, he or she has formed a new intent to commit the second act." *Id.* at 479-80.

Most recently, the Supreme Court in *State v. Chenoweth* applied a statutory elements analysis to determine if two convictions could constitute the same criminal conduct. 185 Wn.2d 218, 221-24, 370 P.3d 6 (2016). In *Chenoweth*, the defendant was convicted of six counts of

third degree child rape and six counts of first degree incest for raping his daughter. *Id.* at 219. The court stated that where the defendant committed only one act giving rise to more than one conviction, the court should examine the intent elements of the relevant statutes to determine if the convictions constitute the same criminal conduct. *Id.* at 221. The court concluded that third degree rape and first degree incest were not the same criminal conduct because the intent to have sex with a child is different than the intent to have sex with a close relative. *Id.* at 223-24.

        b.    Analysis

Here, there are reasonable arguments on both sides of the same criminal conduct issue. Staten argues that (1) EB's testimony shows that there was no change in his objective criminal purpose – to have sex with EB to make another baby – from the time he arrived at EB's apartment building to when he drove to the park and made sexual advances; (2) the kidnapping and indecent liberties involved a continuing, uninterrupted sequence of conduct that started when he pushed EB into the car and ended when he put his hand inside her pants; and (3) the kidnapping furthered the sexual contact that resulted in the indecent liberties conviction.

The State argues that (1) under *Chenoweth*, kidnapping and indecent liberties cannot be the same criminal conduct because the statutory intent required for the two crimes is different; (2) the kidnapping ended when EB left the car and walked to the corner because at that point she regained her liberty; and (3) this interruption in the events allowed Staten to pause and form a new criminal intent.

However, for his ineffective assistance of counsel claim, Staten has the burden of establishing a reasonable probability that the trial court would have found that the two crimes involved the same criminal intent if the issue had been argued. And we cannot ignore the

general rule that the definition of "same criminal conduct" generally is applied narrowly to disallow most same criminal conduct claims. *Reyna Valencia*, 2 Wn. App. 2d at 125.

We conclude that Staten cannot sustain his burden of showing a reasonable probability that the trial court would have found that the two crimes involved the same criminal intent if defense counsel had raised the issue. As a result, Staten cannot show that the alleged deficient performance prejudiced him. Accordingly, we hold that Staten's ineffective assistance of counsel claim fails.[2]

B.      DNA COLLECTION FEE

Staten argues, and the State concedes, that the DNA collection fee that the trial court imposed as a mandatory LFO must be stricken. We agree.

In 2018, the legislature amended RCW 43.43.7541, which now states that the DNA collection fee no longer is allowed if the offender's DNA previously had been collected because of a prior conviction. The Supreme Court in *State v. Ramirez* held that the 2018 amendments to LFO statutes apply prospectively to cases pending on direct appeal. 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

Here, the State concedes that Staten's DNA had been collected previously because of a prior conviction. We hold that the DNA collection fee imposed on Staten must be stricken.

C.      SCRIVENER'S ERROR

Staten argues, and the State concedes, that his judgment and sentence contains a scrivener's error. Staten was convicted by a jury verdict, but the judgment and sentence stated that he pleaded guilty. We agree that the trial court erred.

---

[2] Because of our holding, we do not address whether the two crimes occurred at the same time and place.

The appropriate remedy for a scrivener's error in a judgment and sentence is to remand for the trial court to correct the error. *See State v. Calhoun*, 163 Wn. App. 153, 170, 257 P.3d 693 (2011). Because we remand for the trial court to strike the DNA collection fee, the court will be able to correct this scrivener's error in the judgment and sentence at that time.

D.      SAG CLAIMS

Staten seems to assert that he received ineffective assistance of counsel when defense counsel failed to present certain evidence or address certain issues. He also seems to assert other trial errors. However, Staten does not explain the nature of the alleged errors or how they prejudiced him. Therefore, we decline to consider Staten's SAG claims because they are not specific enough for us to understand the nature of the claims. RAP 10.10(c).

CONCLUSION

We affirm Staten's sentence, but we remand for the trial court to strike the DNA collection fee and correct a scrivener's error in the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

SUTTON, J.

9