[No. 11852–8–I.   Division One.   August 29, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. GLENN
LAMONT THOMAS, *Appellant*.

---

*Elizabeth Selleck* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John L. Austin III, Deputy,* for respondent.

CALLOW, J.—Glenn Lamont Thomas appeals his conviction for unlawful imprisonment, alleging that he was improperly charged under a general statute where a more specific statute applied to the same offense and that prior acts of misconduct were improperly admitted.

Glenn Thomas, age 19, and Tina Moore, age 18, had known each other for 5 years and had a child, Cassandra Moore, born May 23, 1980. The couple have never been married. Tina and Cassandra lived with Tina's mother, Sharon Moore. Subsequent to an incident in which Thomas purportedly assaulted Tina Moore, Tina and her mother instituted civil proceedings to establish parentage and custody of Cassandra. Pursuant to these proceedings, on October 21, 1981, the King County Superior Court issued a restraining order prohibiting Thomas from molesting, harming, bothering, striking or disturbing the peace of Cassandra, Tina, or her family, or removing Cassandra from the custody and care of Tina and her parents. On January 26, 1982, the Superior Court issued a judgment establishing Thomas as Cassandra's father and awarding custody to Tina Moore and ordered the matter transferred to family court for investigation and recommendation as to visitation rights.

Tina Moore testified that on March 16, 1982, as she was departing from a Metro bus, Thomas approached her on foot and asked her to talk with him. She refused. Thomas then took the child from Tina Moore's arms and left the area.

The next day, Thomas called the Moore home and asked Tina to meet with him. After two more phone calls, Tina agreed to meet with Thomas to give him Cassandra's prescription medicine. Seattle police officers went to the scheduled meeting place, instead of Tina, and apprehended Thomas after a chase. Thomas was arrested and charged by information with violation of RCW 9A.40.040, unlawful

imprisonment.

Before trial, Thomas moved to dismiss the charge on the grounds that RCW 26.09.300, regarding violation of temporary restraining orders, more specifically applied to his conduct. Hearing on the motion was reserved for trial. At trial, Thomas made a motion in limine to exclude evidence of prior assaults upon Tina Moore, her father, and brother. The State argued that these prior acts of misconduct were admissible to show common plan, the nature of the parties' relationship and identification. The court denied the motion without elaborating on its reasons. Subsequently, the State introduced testimony on the prior assaults.

Following the close of the State's case, the defendant renewed his earlier motion to dismiss the unlawful imprisonment charge and additionally argued that custodial interference, RCW 9A.40.050, more specifically applied to his conduct. The trial court denied the motion. The defense then rested without presenting additional evidence. The defendant requested instructions to the jury requiring him to be convicted of the lesser crime of custodial interference, if there was a reasonable doubt as to which of the crimes had been proved, defining custodial interference, and setting forth its elements, all in the words of WPIC 4.11, 39.20, and 39.21. The jury was instructed on both unlawful imprisonment and the lesser offense of custodial interference as requested. These instructions became the law of the case. *State v. Robinson,* 92 Wn.2d 357, 597 P.2d 892 (1979). The jury found Thomas guilty of unlawful imprisonment. He appeals.

The issues presented are:

1. Did the trial court err in denying Thomas's motion to dismiss the unlawful imprisonment charge?

(a) Did the crime of custodial interference more properly apply to Thomas's conduct, in light of the principle of statutory construction that where a general and a special statute prohibit the same conduct, the accused may only be charged under the special statute?

(b) Was Thomas's right to equal protection violated by

prosecution and conviction for unlawful imprisonment, a felony, rather than custodial interference, a misdemeanor?

(c) Was the defendant improperly charged with unlawful imprisonment, rather than with violation of a superior court temporary restraining order?

2. Did the trial court properly admit evidence of prior threats and assaultive behavior by the defendant under ER 404(b)?

3. If the trial court erred in admitting evidence of Thomas's prior misconduct, was this error prejudicial?

We turn to the first issue of whether the crime of custodial interference more properly applied to Thomas's conduct, in light of the principle of statutory construction that where a general and a special statute prohibit the same conduct, the accused may only be charged under the special statute.

The defendant contends that the crimes of custodial interference and unlawful imprisonment both apply to his conduct but that the crime of interference more specifically applies to the problem of child snatching by a noncustodial parent. The defendant contends that statutory construction requires that he be prosecuted under the more specific statute. *State v. Danforth,* 97 Wn.2d 255, 643 P.2d 882 (1982); *State v. Walls,* 81 Wn.2d 618, 503 P.2d 1068 (1972).

The State's position is that the elements of proof and available defenses of the two statutes are different and therefore the asserted principle of statutory construction does not apply. *State v. Cann,* 92 Wn.2d 193, 595 P.2d 912 (1979); *State v. Darrin,* 32 Wn. App. 394, 647 P.2d 549 (1982).

■■ Where general and specific laws address the same subject matter, the specific law applies to the exclusion of the general. *State v. Danforth, supra* at 258. A corollary of this rule is that where a general and a specific statute forbid the same conduct, the accused may only be charged under the more specific statute. *State v. Danforth, supra* at 258. The threshold question is whether the two statutes

proscribe the same conduct.

RCW 9A.40.040(1) states:

A person is guilty of unlawful imprisonment if he knowingly restrains another person.

RCW 9A.40.010(1) states:

"Restrain" [as used in RCW 9A.40] means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

RCW 9A.40.050(1) states:

A person is guilty of custodial interference if, knowing that he has no legal right to do so, he takes or entices from lawful custody any incompetent person or other person entrusted by authority of law to the custody of another person or institution.

The essence of unlawful imprisonment is *restraint* and *restriction* while the essence of "custodial interference" is the *taking* from custody. Further, the unlawful imprisonment statute focuses on the person restrained as the direct victim of the crime, while the custodial interference statute speaks of the custodian and not the person actually taken as the victim. In addition, it would be possible to restrain someone (by locking a door) without taking him anywhere, but not possible to take someone someplace without also restricting him and interfering with his liberty. Restraint is an element of unlawful imprisonment not specifically included in the custodial interference statute. This additional element ordinarily would set forth separate and distinct crimes. As defined in RCW 9A.40.010(1), "restraint" includes substantial interference with the personal liberty of a child under 16 years of age, even if the victim acquiesces to the interference. Thus, in the case of a child under 16 years of age, consent of the victim is not a defense to

unlawful imprisonment. Consent of the parent or guardian, on the other hand, is a defense to unlawful imprisonment. RCW 9A.40.010(1). Similarly, consent of the parent or guardian is a defense to custodial interference, because it presumably would give the actor the legal right to take the child.

The act of taking or enticing a young child from legal custody is also necessarily a restriction on the child's movements which interferes substantially with the child's liberty. If a young child is taken or enticed from custody, the child is then subject to the supervision and control of the person interfering with that custody. Restriction on the child's movements is an inherent part of such supervision and control. It is immaterial to the commission of either unlawful imprisonment or custodial interference whether the actor intended his actions to be an affront to the victim restricted in the exercise of his liberty or to the custodian of the victim. *See* RCW 9A.40.020(1) and .030(2).

The elements of unlawful imprisonment are necessarily present in situations where the lesser offense of custodial interference is violated and therefore the two statutes proscribe the same conduct. It follows that the principles of statutory interpretation require that the defendant be charged with the specific, rather than with the general crime. *State v. Danforth, supra.* Here, custodial interference is the specific crime. Custodial interference only applies in situations where the victim is entrusted by authority of law to the custody of another person and the actor interferes with that custody. Unlawful imprisonment is not similarly limited to custody situations. Therefore, Thomas should have been charged with the specific crime of custodial interference rather than the general crime of unlawful imprisonment.

We next address whether Thomas's right to equal protection was violated by prosecution and conviction for unlawful imprisonment, a felony, rather than custodial interference, a misdemeanor.

■ It is a violation of equal protection for a prosecutor

to be given discretion to charge a defendant with a felony or misdemeanor based upon identical conduct. *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970); *State v. Martell*, 22 Wn. App. 415, 591 P.2d 789 (1979).

*State v. Cann, supra* at 197, stated:

> Thus the prosecutor has a basis for distinguishing between persons who can be charged under one or the other statute, and is not at liberty to charge under the general statute a person whose conduct brings his offense within the special statute. Under such circumstances, there is no denial of equal protection of the laws.

Here, the State was not at liberty to prosecute Thomas under the unlawful imprisonment statute but rather should have charged him under the specific statute forbidding custodial interference. Therefore, the statutory scheme requires the prosecution to charge the defendant under the specific statute which is a gross misdemeanor and does not deny a defendant the equal protection of the laws. *See State v. Bower*, 28 Wn. App. 704, 711, 626 P.2d 39 (1981). We construe the statutes as not granting a prosecutorial discretion where the elements of the two statutes coexist. *See, e.g., State v. Zornes, supra; State v. Martell, supra.*

The next issue presented is whether the defendant was improperly charged with unlawful imprisonment, rather than with violation of a superior court temporary restraining order.

RCW 26.09.300(1) states:

> Any person having had actual notice of the existence of a restraining order issued by a court of competent jurisdiction in an action for the dissolution of a marriage under this chapter who refuses to comply with the provisions of such order when requested by any peace officer of the state shall be guilty of a misdemeanor.

The defendant argues that under the principles of statutory construction discussed previously, he should have been charged with violation of RCW 26.09.300, a misdemeanor, rather than unlawful imprisonment. We disagree.

First, although child custody proceedings are provided for in RCW 26.09, since the temporary restraining

order was not issued in a dissolution action, Thomas could not have been charged under RCW 26.09.300 for violation of that order. By its terms, RCW 26.09.300 only applies in dissolution actions. Second, even if RCW 26.09.300 encompasses restraining orders issued in nondissolution custody proceedings, the temporary restraining order issued against the defendant was not in effect at the times relevant to this case. The restraining order was issued on October 21, 1981, in a civil paternity proceeding. A judgment and order establishing parentage and support was issued in that proceeding on January 26, 1982. The court awarded custody of the child to her mother and transferred the matter to family court for visitation and recommendations. Although the visitation question was left open, the court's order as to custody and parentage was final and therefore effectively terminated the temporary restraining order. *See generally* 2 L. Orland, Wash. Prac. § 613 (3d ed. 1972). The transfer to family court for recommendation on visitation rights did not prolong the temporary restraining order. Finally, RCW 26.09.300 does not more specifically proscribe the same conduct as RCW 9A.40.040. A restraining order can be violated in any number of ways, but RCW 9A.40.040 can only be violated by the knowing restraint of another person. The elements of a violation of RCW 26.09.300 are (a) knowledge of the existence of a valid restraining order, (b) issued by a court of competent jurisdiction, (c) in a dissolution action, and (d) refusal to comply with the order, (e) when requested to do so by a peace officer. RCW 26.09.300 is not applicable to the circumstances. *See State v. Darrin, supra* at 396–97.

The next issue is whether the trial court properly admitted evidence of prior threats and assaultive behavior by the defendant under ER 404(b).

ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b) is to be read in conjunction with ER 402 and 403. *State v. Saltarelli*, 98 Wn.2d 358, 361, 655 P.2d 697 (1982). Whether the evidence makes the existence of any fact that is of consequence to the determination of the action more or less probable must be considered. ER 402. The test is "'whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged.'" *State v. Saltarelli, supra* at 362 (quoting *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952)). The probative value of relevant evidence must be balanced against its prejudicial effect. ER 403. Evidence may not be admitted to prove his bad character in order to show that the accused probably acted in conformity with his previous actions. *Saltarelli*, at 362.

Further, as stated in *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981):

[B]efore exercising its discretion to admit the prior [criminal conduct], the trial court should weigh the necessity for its admission against the prejudice that it may engender in the minds of the jury. Without such balancing and a conscious determination made by the court on the record, the evidence is not properly admitted.

(Citation omitted.)

At the commencement of trial, Thomas's counsel moved to exclude any reference to past assault against the child's mother and members of her family. The trial judge heard arguments from the State and Thomas on the admissibility of evidence of this prior conduct under ER 404(b). The State argued that the evidence was admissible to show identification and course of conduct or plan, and specifically to show that the mother did not agree to the taking of her child and that Thomas's conduct was intended to agitate the mother rather than to exercise parental rights over the child. At the close of the argument, the court stated, "I am inclined to agree [with the State]. The motion in limine

will be denied." The court did not discuss admissibility or make a "conscious determination on the record," as required in *State v. Tharp,* that the probative value of the evidence be weighed against its prejudicial effect.

We find that the relevance of the evidence for any purpose permitted in ER 404(b) was outweighed by its prejudicial effect. At trial, the prosecutor questioned the child's mother about two prior assaults against her and elicited testimony from the child's grandmother as to previous assaults on members of the mother's family. This evidence was not necessary to prove an element of the crime charged or admissible for any of the purposes set forth in ER 404(b). First, as stated, the crime of unlawful imprisonment prohibits the knowing restraint of another person, and the actor's purpose for committing the action is irrelevant. RCW 9A.40.040. Further, identification was not an issue in the case. It was not disputed that Thomas took the child or that he was the person whom the police apprehended.

The one "essential ingredient" of the case to which the evidence of prior assaults might be relevant is the question of consent of the mother. Restraint, as used in RCW 9A.40.040, is defined in RCW 9A.40.010 as including restriction on the movements of a child less than 16 if the parent or person having custody has *not acquiesced.* Thomas's prior assaults, particularly those against the mother, do indicate that the mother was unlikely to have agreed and that their relationship was such that Thomas was likely to take the child regardless of the mother's wishes.

However, the mother's testimony indicated that Thomas forcibly took the child from her arms. Thomas's counsel did not attempt to discredit this testimony on cross examination or offer contradictory evidence. Therefore, although relevant, the evidence of past misconduct was unnecessary to the case. Additionally, the evidence was potentially prejudicial. The jury could infer from the past misconduct that Thomas was of bad character and was likely to act in conformity with his character. *See* ER 404(b). Further, the evidence could have misled the jury into believing that

Thomas's possible intent to harm the child's mother or her family was relevant to their determination of guilt or innocence. *See* ER 403. The probative value of the evidence concerning the mother's consent did not outweigh its prejudicial effect. *See* ER 403.

Our holding that the admission of the evidence of prior misconduct was error leads us to inquire as to whether the error was prejudicial.

██ The test for whether an improper evidentiary ruling constitutes reversible error was stated in *State v. Tharp, supra* at 599:

> [W]e apply the rule that error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

The elements of the crime charged were clearly established by the uncontroverted testimony of the child's mother, supported by the testimony of the arresting officer and the child's grandmother. Thomas did not take the stand in his own defense nor offer any other evidence that would negate any essential element of the crime. Therefore, it is not reasonably probable that the admission of the evidence of the defendant's prior misconduct materially affected the outcome of the trial. The trial court's denial of Thomas's motion in limine was not reversible error.

The jury convicted the defendant of unlawful imprisonment and not of the lesser charge of custodial interference, which was the proper statute under which it was required that he be charged. We must reverse the conviction and sentence and remand the cause for retrial for violation of RCW 9A.40.050.

SWANSON and CORBETT, JJ., concur.

Reconsideration pending March 15, 1984.