IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34638-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIAN MIGUEL JUAREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court, after a jury verdict, convicted Julian Juarez of

three crimes: (1) violation of a protection order by reason of an assault, a felony,

(2) felonious violation of a protection order by reason of multiple violations, and

(3) second degree assault. All crimes stem from Julian Juarez's attack on the mother of

his children, Eugenia Claudia Gutierrez, on the same day and at the same place. Julian

Juarez's and the victim's children could observe the violence. The jury found the

presence of the minor children and domestic violence to be aggravating circumstances.

On appeal, Julian Juarez asks that we vacate one or more of his convictions, and he

claims error in sentencing. We grant him partial relief.

FACTS

Julian Miguel Juarez and Eugenia Claudia Gutierrez bore two daughters. Between July 15, 2014 and beyond the present, a domestic violence no-contact order has prohibited and will prohibit Juarez from contacting Gutierrez. Despite the order, Juarez still maintained visitation rights with his daughters.

Julian Juarez's convictions derive from his confrontation with Eugenia Gutierrez on January 21, 2016. We lift the facts of the crimes from trial testimony.

Eugenia Gutierrez arranged to meet Julian Juarez's mother, Bertha Quintero, on January 21, so Quintero could transport the children to Julian Juarez for visitation. Gutierrez told Quintero that Juarez could not be present during the transfer. Gutierrez drove the girls to the designated location, a large parking lot near a grassy park and adjacent to a community college. The children sat strapped in forward-facing car seats in the backseat. Quintero arrived two minutes later and parked two spaces away from Gutierrez's car. An empty parking spot lay between the two cars.

As Eugenia Gutierrez exited her car, Julian Juarez hurriedly departed Bertha Quintero's car. The patriarchal Juarez demanded that Gutierrez explain her behavior to him. Juarez pushed Gutierrez toward her car and instructed her to enter the vehicle. Gutierrez shoved Juarez and instructed him to leave her alone. Juarez grabbed Gutierrez's hair with one hand to hold her still, and he punched her in the face with his

other hand. Juarez again demanded Gutierrez to enter her car. Gutierrez again refused, so Juarez punched her again.

Julian Juarez released his hold on Eugenia Gutierrez's hair and walked to the passenger side door of her car. Juarez opened the door with the expectation that Gutierrez would enter the vehicle. Gutierrez instead walked toward the grassy park in front of the car to retreat from Juarez. Gutierrez did not want her children, seated in the back seat of her car, to witness more violence. We do not know how long Gutierrez remained free from Juarez's grasp as she walked to the grass. Juarez followed Gutierrez to the grass. No testimony measured the distance from the car to the grass or how far Gutierrez walked from the car before Juarez attacked her in the grass.

Once on the grass, Julian Juarez grabbed Eugenia Gutierrez's hair, and she collapsed to the ground. Juarez dragged Gutierrez by her hair and struck her again. Bertha Quintero loudly inquired of her son about his conduct. Quintero commanded Juarez to cease his behavior, so the dutiful son returned to the car and Quintero drove away.

According to Eugenia Gutierrez, the children could view the confrontation. Nevertheless, Gutierrez did not specifically state whether the children could see their father's behavior adjacent to the car, his behavior in the grass, or both.

Two witnesses, college student Melanie Merrill and postal carrier Christina Acevedo, watched the confrontation between Julian Juarez and Eugenia Gutierrez. While

seated in her truck, Merrill heard Gutierrez yell at Juarez to stop. She espied Juarez push and punch Gutierrez. Merrill called 911. According to Merrill, Juarez punched Gutierrez three to five times as the two stood between the two cars. Juarez punched Gutierrez ten times on the grass. In between the two locations, Juarez chased Gutierrez.

While walking on her postal route, Christina Acevedo heard Eugenia Gutierrez holler: "help, call 911." Report of Proceedings (RP) (July 12, 2016) at 116. Acevedo peered in the direction from where the cry originated and saw Gutierrez and Juarez in the grass. She spotted Juarez holding Gutierrez's hair. Acevedo noted that Gutierrez could not escape the grip of her hair. Acevedo also called the police.

Eugenia Gutierrez suffered bumps on her head, a black eye, a bruised cheek, and a bump on the left side of her face. Responding officers photographed Gutierrez's wounds on the day of the assault. Gutierrez took photographs of her injuries two days after the altercation.

## PROCEDURE

The State of Washington charged Julian Juarez with three offenses arising from his attack on Eugenia Gutierrez on January 21, 2016. Our appeal concerns in part the relationship between the three overlapping counts and whether the State could convict Juarez on all three charges. In count one, the State alleged assault in violation of a protection order whereby Juarez "intentionally assaulted" Eugenia Gutierrez. Clerk's Papers (CP) at 24. The State sought conviction of this first count as a class C felony. In

4

count two, the State charged felony violation of a protection order with at least two preceding convictions for violating provisions of a court order. In count three, the State alleged second degree assault whereby Juarez, with the intent to commit the felony of unlawful imprisonment, intentionally assaulted Gutierrez.

The State of Washington sought a domestic violence sentence enhancement for each count based on an allegation that Julian Juarez committed each offense against a family or household member. The State also pled the aggravating sentencing factor that each offense occurred within the presence of the victim's or the offender's minor children. The State of Washington agreed in its information that it could not convict Julian Juarez on count one, assault in violation of a protection order, a class C felony, by only proving an assault that amounts to assault in the first or second degree.

At trial, Julian Juarez stipulated to two earlier violations of a no-contact order. Throughout trial, conflicting testimony arose about the number of times Juarez struck Gutierrez.

Throughout trial and in closing argument, the State referred to the January 21 incident as "the" assault, "an" assault, and other various phrases that implied a continuous assaultive act. The State never separated, as discrete assaults, Julian Juarez's conduct near the cars from his comportment in the grass. When explaining the events that transpired, the State commented: "[a]ll the witnesses corroborate that the assault goes

5

to this grassy area." RP (July 13, 2016) at 167. Eugenia Gutierrez measured the assault as lasting between five to ten minutes.

At the close of testimony, Julian Juarez moved for dismissal of the second degree assault count. This degree of assault requires an intent to commit a felony, which includes unlawful imprisonment. He argued that the State had not proved an unlawful restraint in part because he only asked Eugenia Gutierrez to talk with him and his directing Gutierrez into her car by force did not amount to a restraint. The State responded by contending evidence showed an unlawful restraint because Juarez dragged Gutierrez by the hair such that she could not escape his grasp. The trial court denied the motion to dismiss.

Despite the State of Washington conceding, by an amended information, that assault in the second degree could not serve as the predicate assault for count one, the jury received no instruction consistent with this clarification or concession. The trial court instructed the jury that it could convict Julian Juarez on count one if, in addition to Juarez violating a protection order, his "conduct was *an assault*." CP at 85 (emphasis added). Juarez did not object to this instruction.

The trial court instructed the jury that to convict Julian Juarez on count three, second degree assault, the jury must find that he assaulted Eugenia Claudia Gutierrez and "the assault was committed with the intent to commit unlawful imprisonment." CP at 91. Another instruction defined "unlawful imprisonment" as a person's movement being

6

restrained by another person "in a manner that substantially interferes with the . . .

person's liberty." CP at 93. Juarez did not request any instructions for an inferior degree

offense for any of the counts. The jury found Julian Juarez guilty of all three counts. The

jury also found that Juarez committed all three crimes against family or household

members and that all three crimes occurred within the presence of the minor children.

At sentencing, the State asked the trial court to impose, on count one, the statutory

maximum of sixty months and no community custody for counts one and two because of

an otherwise statutory maximum. Julian Juarez mentioned that the maximum sentence

for both counts one and two was sixty months. Juarez asked that the court impose

concurrent sentences for the two counts.

During sentencing, the parties discussed whether any of the convictions should be

considered the same criminal conduct for purposes of sentencing. The trial court

commented:

> I don't believe that it's an issue of double jeopardy to him—for Mr.
> Juarez to be convicted of all three offenses. I don't—I don't believe that
> Count 2 is the same course of criminal conduct as to Count 1 and 3. I think
> that that's a separate crime and you can commit one and not commit the
> other and so consequently, I think he has essentially—essentially has two
> current offenses, one encompassing Counts 1 and 3 and one encompassing
> Count 2.

RP (July 29, 2016) at 21.

The trial court sentenced Julian Juarez to the maximum of sixty months for counts

one and two and fifty-seven months for count three. The court imposed twelve additional

7

months to all counts for the aggravating factor of crimes in the presence of minors. The

State sought clarification.

> [State's Attorney]: And then regarding the sentences, Your Honor,
> what I heard the Court say is a total of sixty months for count 1 and count 2
> and that incorporates a twelve-month enhancement. Is that what the
> Court—
> JUDGE: No, twelve months on top of the sixty.
> [State's Attorney]: Well, it's a statutory maximum of sixty—
> JUDGE: I think the twelve aggravating can be used as more than
> sixty.

RP (July 29, 2016) at 29. The trial court clarified that it was imposing community

custody as to count three. Nevertheless, paragraph 4.B.1 of the judgment and sentence

imposes twelve months of community custody on counts one and two in addition to an

extra twelve months for the aggravating factor. Paragraph 4.C.2 of the judgment imposes

community custody "as to count 3 only." CP at 115.

During sentencing, Julian Juarez asked the trial court to impose legal financial

obligations in an amount as low as possible and to impose no costs for incarceration or

for medical assistance. Juarez's counsel mentioned that Juarez owes legal financial

obligations for other convictions, he will owe child support when leaving prison, and his

convictions will impair his chance for employment on release. The trial court found

Juarez to be indigent and limited financial costs to $600 and a cost of incarceration at

$200. Contrary to the trial court's finding during the sentencing hearing, the judgment

and sentence contains boilerplate language finding Julian Juarez to be an adult with a likely future ability to pay. Paragraph 4.D.5 imposes costs of medical care on Juarez.

## LAW AND ANALYSIS

Julian Juarez lists numerous assignments of error on appeal. First the trial court erred in allowing the jury to convict him on count one for assault in violation of a protection order, a felony, based on the predicate crime of second degree assault because RCW 26.50.110(4) does not approve second degree assault as a predicate. Second, a conviction on both counts one and two, count two being felony violation of a protection order by reason of past violations, violates double jeopardy. Third, Juarez's trial counsel performed ineffectively by failing to ask for an inferior degree offense instruction for count three, second degree assault. Fourth, the trial court committed error, during sentencing, when refusing to consider assault in violation of a protection order and felony violation of a protection order the same criminal misconduct. Fifth, the trial court erred in sentencing Juarez beyond the statutory maximum by adding aggravating factors to the sentence and imposing community custody. Sixth, the trial court erred when imposing medical costs in prison as legal financial obligations.

### Conviction for Count One

On appeal, Julian Juarez first asks, on two grounds, that we vacate his conviction on count one, the felony conviction for assault in violation of a protection order. First, he argues that the trial court erred when convicting him of count one because the jury

9

instructions and the State's closing arguments mistakenly permitted the jury to use count three, the second degree assault count, as the predicate for the felony assault in violation of a protection order contrary to RCW 26.50.110. RCW 26.50.110(4) prohibits the use of second degree assault to raise a violation of a protection order from a misdemeanor to a felony. Second, Juarez contends that his convictions for counts one and two, violating a protection order more than once, impresses double jeopardy because each count concerns his violation of a protection order. Since Juarez failed to raise either argument before the trial court, the State contends Juarez waived the argument for purposes of his appeal. We address this procedural question first.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). Yet, RAP 2.5(a)(3) permits a party to raise manifest errors affecting a constitutional right.

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). A third important formulation is the facts necessary

10

to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

Without any analysis, this court and the Supreme Court have often held that a double jeopardy argument may be considered for the first time on appeal, because the contention implicates a manifest error affecting a constitutional right. *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998); *State v. Allen*, 150 Wn. App. 300, 312, 207 P.3d 483 (2009); *State v. Turner*, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000). We agree at least for purposes of this appeal. We readily spot the error on the record. Julian Juarez shows prejudice by being convicted of two crimes, not one crime.

We hold that Julian Juarez's convictions for counts one and two breach the double jeopardy clause. We, therefore, vacate Juarez's conviction for count one, assault in violation of a protection order. We thereby need not address if the trial court could convict Juarez of both counts one and three.

The Fifth Amendment to the United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life or limb. U.S. CONST. amend. V. Similarly, the Washington State Constitution provides that a person may not be twice put in jeopardy for the same offense. CONST. art. I, § 9. The double jeopardy clauses of the United States and Washington State Constitutions protect a defendant from multiple convictions for the same crime. *State v. Tvedt*, 153 Wn.2d 705,

11

710, 107 P.3d 728 (2005); *State v. Green*, 156 Wn. App. 96, 99, 230 P.3d 654 (2010). Stated differently, the State may not punish an offender multiple times for the same offense. *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006). Nevertheless, within constitutional constraints, the legislature may define crimes and punishments as it sees fit. *State v. Smith*, 177 Wn.2d 533, 545, 303 P.3d 1047 (2013); *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995).

Washington courts apply two distinct tests for assessing whether double jeopardy precludes two convictions. First, when a defendant suffers multiple convictions for violating several and distinct statutory provisions, the courts apply the "same evidence" test. *State v. Adel*, 136 Wn.2d at 632-35 (1998). Under the same evidence test, double jeopardy is violated if a defendant is convicted of offenses that are the same in law and in fact. *State v. Calle*, 125 Wn.2d at 772. Second, when a defendant has multiple convictions for violating the same statute, the courts implement the "unit of prosecution" test. *State v. Adel*, 136 Wn.2d at 634.

The State asks that we employ the same evidence test to Julian Juarez's appeal. Nevertheless, counts one and two convicted Julian Juarez under the same statute, RCW 26.50.110. When a defendant is convicted of multiple violations of the same statute, the double jeopardy question focuses on what "unit of prosecution" the legislature intends as the punishable act under the statute. *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669

(2002). Thus, we decline to apply the same evidence test and instead employ the unit of prosecution test.

When the law convicts a defendant of violating the same statute multiple times, we must determine what "unit of prosecution" the legislature intended as the punishable act under the specific criminal statute. *State v. Reeder*, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015). Double jeopardy protects a defendant from conviction more than once under the same statute if the defendant commits only one unit of the crime. *State v. Reeder*, 184 Wn.2d at 825. The unit of prosecution for a crime can be either an act or a course of conduct. *State v. Hall*, 168 Wn.2d 726, 731, 230 P.3d 1048 (2010).

The determination of the unit of prosecution ultimately revolves around a question of statutory interpretation and legislative intent. *State v. Barbee*, 187 Wn.2d 375, 382, 386 P.3d 729 (2017). The goal of statutory interpretation is to ascertain and carry out the intent of the legislature. *State v. Barbee*, 187 Wn.2d at 382-83. The first step is to look to the plain meaning of the statute. *State v. Barbee*, 187 Wn.2d at 383. If the plain meaning of the statute is ambiguous, we may determine legislative intent by reviewing legislative history. *State v. Barbee*, 187 Wn.2d at 383. Last, we perform a factual analysis as to the unit of prosecution because the facts in a particular case may reveal more than one unit of prosecution is present. *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007). If there is still doubt, the rule of lenity applies and requires any ambiguity be resolved against turning a single transaction into multiple offenses. *State v.*

13

*Reeder*, 184 Wn.2d at 825.

We must then ask what act or course of conduct did the legislature define as the punishable act under the violation of a protection order statute, RCW 26.50.110. Subsection (4) of the statute controls count one, assault in violation of a protection order, a felony. Subsection (5) of the statute governs count two, felony violation of a protection order. RCW 26.50.110 reads, in relevant part:

> (1)(a) Whenever an order is granted under this chapter . . . and the . . . person to be restrained knows of the order, *a* violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
> (i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;
> . . . .
> (iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location;
> . . . .
> (4) Any assault that is *a* violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony. . . .
> (5) *A* violation of a court order issued under this chapter . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter . . . . The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

(Emphasis added.) Note that the statute repeatedly refers to "a violation." The statute then lists a number of ways in which "a violation" may occur.

This court has unsurprisingly observed that RCW 26.50.110 punishes "a violation of a no-contact order." *State v. Brown*, 159 Wn. App. 1, 10, 248 P.3d 518 (2010). The

14

court reasoned that use of the word "a" in the statute renders each violation of a protection order one unit of prosecution. *State v. Brown*, 159 Wn. App. at 10-11. In other settings, the Supreme Court has consistently interpreted the legislature's use of the word "a" in a criminal statute as authorizing punishment for each individual instance of criminal conduct, even if multiple instances of such conduct occurred simultaneously. *State v. Ose*, 156 Wn.2d 140, 147, 124 P.3d 635 (2005); *State v. Brown*, 159 Wn. App. at 11.

*State v. Brown* and other decisions under RCW 26.50.110 provide some, but little guidance, in resolving the issue in our appeal. In *State v. Brown*, Frederick Brown, in violation of a protection order repeatedly called his former girlfriend over a period of weeks. The State brought five charges for discrete days even though Brown made numerous calls on each of the days. This court reasoned that each call constituted a separate violation of the statute. In *State v. Allen*, 150 Wn. App. 300 (2009), Leif Allen sent two e-mails on different days that the victim viewed at the same time, and he was convicted of two no-contact order violations. Allen argued that because the victim viewed the e-mails at the same time, one of his convictions violated double jeopardy. The court disagreed because the statute focuses on the defendant's actions, not the victim's. Each act of sending an e-mail constituted a statutory violation. In *State v. Parmelee*, 108 Wn. App. 702, 709, 32 P.3d 1029 (2001), each of the three charges filed against Allan Parmelee for violating the protection order was based on a different,

15

individual letter mailed to the victim.

In our appeal, the State charged Julian Juarez with two counts for his conduct that occurred simultaneously, rather than repeatedly. Juarez violated the statute in different ways not at different times, first by assaulting Eugenia Gutierrez and second by having already violated the statute on other occasions. The State repeatedly referenced, at trial, the attack on Gutierrez as one ongoing assault. The encounter lasted five to ten minutes. The statute and cases decided thereunder imply that one set of circumstances is "a violation" or only one unit of prosecution. Assuming our decision is a close call, we must construe the statute in favor of Juarez. The State affords us no basis to rule in its favor under the unit of prosecution standard, since the State mistakenly forwards the same evidence rule.

The State of Washington argues that the trial court resolved the double jeopardy contention during sentencing when the court remarked: "I don't believe that it's an issue of double jeopardy to him—for Mr. Juarez to be convicted of all three offenses." RP (July 29, 2016) at 21. The trial court's comment, when viewed in total, addressed more whether the court should consider one or more crimes similar in nature for purposes of sentencing than whether convictions of more than one crime constituted double jeopardy. Regardless, the trial court's discussion of double jeopardy does not prevent this court's review. Claims of double jeopardy are questions of law, which appellate courts review de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

16

The usual remedy for double jeopardy violations is to vacate the lesser offense. *State v. Hughes*, 166 Wn.2d at 686 n.13. The State prosecuted both counts one and two as class C felonies. We opt to vacate count one, assault in violation of a protection order, because this vacation avoids the problem of the State raising the crime from a gross misdemeanor to a felony despite RCW 26.50.110 denying this opportunity for conduct involving second degree assault.

We note that this court recently affirmed convictions for both felony violation of a protection order and fourth degree assault in face of a double jeopardy challenge. *State v. Novikoff*, ___ Wn. App. ___, 404 P.3d 513 (2017). Nevertheless, the Novikoff convictions stemmed from different statutes, respectively RCW 26.50.110 and RCW 9A.36.041. Thus, the same evidence test applied. For the same reason, Julian Juarez's convictions for second degree assault and violation of the protection order do not violate double jeopardy.

Inferior Degree Offense for Second Degree Assault

Julian Juarez next attacks his conviction on count three, second degree assault, on the ground that his trial counsel failed to propose an inferior degree offense jury instruction for the lower crime of fourth degree assault. Juarez thereby asserts ineffective assistance of counsel. The State obviously notes that Juarez did not raise this issue at trial. Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). An

17

exception to this rule, under RAP 2.5(a)(3), is manifest constitutional error. Ineffective assistance of counsel may constitute manifest constitutional error.

For an accused to show ineffective assistance of counsel for failing to request a jury instruction, the accused must establish entitlement to the instruction. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). Therefore, we first review whether the trial court should have, assuming Julian Juarez requested one, delivered an inferior degree jury instruction for fourth degree assault.

RCW 10.61.003 codifies the right to an inferior degree offense jury instruction. The statute reads:

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

Washington's leading decision on inferior degree offense jury instructions is *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). In *Workman*, the state high court instituted a two-tine test to determine whether a party is entitled to an instruction on an inferior degree offense. Under the first prong of the test, labeled the legal prong, the court asks whether the inferior degree offense consists solely of elements necessary to conviction of the greater, charged offense. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). If one may commit the greater offense without committing the lesser offense, the latter is not an included crime. *State v. Roybal*, 82 Wn.2d 577, 583, 512 P.2d

18

718 (1973). Under the second or factual prong, the court asks whether the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense. *State v. Condon*, 182 Wn.2d at 316. The requesting party is entitled to the inferior degree offense instruction when we answer both questions with yes. *State v. Condon*, 182 Wn.2d at 316.

We compare second degree assault with fourth degree assault, the inferior crime. RCW 9A.36.021 declares, in relevant section:

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
> (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
>
> . . . .
>
> (e) With intent to commit a felony, assaults another; or
> (f) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture.

Assault in the second degree is generally a class B felony. RCW 9A.36.021(2). RCW 9A.36.041 reads, in pertinent part:

> (1) A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another.

Depending on the circumstances, assault in the fourth degree is either a gross misdemeanor or a class C felony. RCW 9A.36.041(2); RCW 26.50.110(1)(a)(4),(5).

We address only the factual prong of the *Workman* test. An accused fulfills the factual prong when the evidence permits a jury to rationally find the accused guilty of the

19

lesser offense and acquit him of the greater. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). In other words, the defendant must establish that evidence supports a finding that he committed only the inferior degree offense. In making this determination, the court must consider all evidence presented at trial by either party. *State v. Fernandez-Medina*, 141 Wn.2d at 455. The court must also view the evidence in the light most favorable to the party requesting the inferior degree offense instruction. *State v. Condon*, 182 Wn.2d at 321. The evidence must affirmatively establish the defendant's theory of the case. *State v. Fernandez-Medina*, 141 Wn.2d at 456.

The State possessed alternative grounds for convicting Julian Juarez of second degree assault. First, Juarez may have assaulted Eugenia Gutierrez by intentionally striking her and recklessly inflicting substantial bodily harm in violation of RCW 9A.36.021(1)(a). Second, Juarez may have assaulted Gutierrez by assaulting her with the intent to commit a felony in breach of RCW 9A.36.021(1)(e). At the trial court and on appeal, the State relies only on Juarez's felonious intent in order to thwart Juarez's contention that he may have only committed fourth degree assault. The State contends that the felony constituted unlawful imprisonment.

One commits the crime of unlawful imprisonment when one "*knowingly restrains another person.*" RCW 9A.40.040 (emphasis added). The criminal code defines "restrain" as:

20

> "Restrain" means to *restrict a person's movements* without consent and without legal authority in a manner which *interferes substantially with his or her liberty. . . .*

RCW 9A.40.010(6) (emphasis added). The essence of unlawful imprisonment is *restraint* and *restriction*. *State v. Thomas*, 35 Wn. App. 598, 603, 668 P.2d 1294 (1983).

Julian Juarez argues that the evidence supported an inference that he committed fourth degree assault. We disagree. Juarez suggests that neither eyewitness testified that he knowingly restrained Eugenia Gutierrez in a manner that substantially interfered with her liberty. Nevertheless, despite the eyewitnesses not mouthing those legal terms, the witnesses' testimony inevitably leads to such a conclusion. Postal worker Christina Acevedo described seeing Juarez holding Eugenia Gutierrez by her hair in a manner that Gutierrez could not escape. Even the act of holding Gutierrez by her hair, without any punching, was sufficient to restrain Gutierrez's movements. In addition, under the undisputed testimony, Juarez directed Gutierrez into the car, where he could restrain her movement. Under the totality of the evidence heard by the jury, the jury could not find that Julian Juarez assaulted Gutierrez only in the fourth degree.

Same Criminal Conduct for Purpose of Sentencing

Julian Juarez next contends that the trial court erred by not considering his conviction on count one, assault in violation of a protection order, and his conviction on count 2, felony conviction of a protection order by multiple violations, to be the same criminal conduct for purposes of sentencing under RCW 9.94A.589(1)(a). Since we

21

otherwise vacate Juarez's conviction on count one, we need not and do not address this assignment of error.

### Sentence Beyond Maximum

Julian Juarez's jury returned special verdicts for each count on the basis that Juarez committed the crimes within the sight and hearing of his and Eugenia Gutierrez's children. We do not concern ourselves on appeal with count one. The parties agreed that the maximum sentence for count two, a class C felony, was sixty months. RCW 9A.20.021(1)(c). In turn, the trial court imposed a sentence of sixty months for felony violation of a protection order by repeated violations. The trial court then added another twelve months for the aggravator of the presence of the children. The sentence then totaled seventy-two months. The State sought correction of the error, but the trial court imposed the seventy-two months.

On appeal, Julian Juarez assigns error to the trial court's imposition of seventy-two months of prison time on count two. The State concedes error. Our Supreme Court recently held that even if a jury finds the existence of an aggravating factor, a defendant's aggravated sentence cannot exceed the statutory maximum for the crime, as set forth in RCW 9A.20.021. *State v. Barbee*, 187 Wn.2d at 392-93 (2017).

Julian Juarez also claims his sentence for count two exceeds the statutory maximum when one considers his time in community custody. As previously indicated, the maximum sentence for count two is five years. RCW 9A.20.021(1)(c). The trial

22

court imposed a sentence of sixty months plus an additional twelve months of community custody.

The Washington Supreme Court has held that the addition of prison time and time in community custody may not exceed the statutory maximum term for the crime. *State v. Boyd*, 174 Wn.2d 470, 471-73, 275 P.3d 321 (2012). The court reversed the sentence and remanded the case for resentencing to reduce the defendant's term of community custody to avoid a sentence in excess of the statutory maximum.

The trial court clarified that it imposed community custody as to count three. Nevertheless, paragraph 4.B.1 of the judgment and sentence imposes twelve months of community custody on counts one and two in addition to an extra twelve months for the aggravating factor. Paragraph 4.C.2 of the judgment imposes community custody "as to count 3 only." CP at 115. This conflict needs correction.

### Legal Financial Obligations

At sentencing, the trial court found Julian Juarez to be indigent. The court also capped the imposition of costs for incarceration at $200. Nevertheless, the boilerplate language in the judgment and sentence, contrary to the trial court's oral ruling, directed Juarez to pay the cost of his medical care in prison. Medical care costs are discretionary legal financial obligations. *State v. Leonard*, 184 Wn.2d 505, 506-08, 358 P.3d 1167 (2015). The State concedes a clerical error in the judgment and sentence.

23

No. 34638-2-III
*State v. Juarez*

CONCLUSION

We vacate Julian Juarez's conviction on count one, assault in violation of a protection order. We remand for resentencing on count two consistent with this opinion and for the striking of the imposition of costs for medical care. Otherwise, we affirm the trial court's rulings and Juarez's convictions for counts two and three. We deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

24